1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

8    UNITED STATES OF AMERICA,              Case No.  14-cr-00196-CRB-4
9                Plaintiff,
                                            **ORDER DENYING MOTION FOR**
10        v.                                **RECONSIDERATION**
11   KEITH JACKSON,
12             Defendant.

13        Defendant Keith Jackson has moved for reconsideration of the Court's October 2, 2020

14   order denying his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  See

15   Mot. for Reconsideration (dkt. 2266); Original Mot. (dkt. 2244); Order Denying CR (dkt. 2247).

16   The Court's order held that Mr. Jackson had not demonstrated extraordinary and compelling

17   reasons for his release because his circumstances did not meet the "family circumstances" prong

18   of U.S.S.C. § 1B1.13, and because the Court was not at liberty to avail itself of the catch-all prong

19   of that same policy statement.  See Order Denying CR at 3.  Mr. Jackson now correctly argues that

20   the Court is not bound by U.S.S.G. § 1B1.13, see Mot. for Reconsideration at 2; United States v.

21   Aruda, 993 F.3d 797, 802 (9th Cir. 2021).  The Ninth Circuit has held that that policy statement is

22   not binding on compassionate release motions filed by a defendant, although it "may inform a

23   district court's discretion for § 3582(c)(1)(A) motions filed by a defendant."  Id.  The Court now

24   re-evaluates Mr. Jackson's original motion, with the understanding that U.S.S.G. § 1B1.13 is not

25   binding, and concludes that compassionate release is still not warranted.

26   I.    **BACKGROUND**

27        Mr. Jackson's motion for reconsideration includes no discussion of the factual

28   circumstances that he asserts justify his release.  See generally Mot. for Reconsideration.  His

original motion included two: his family's medical circumstances and his own.  As the Court stated in its denial:

> Mr. Jackson asserts that his mother has a number of medical problems, his sister has her own medical problems and cannot help care for his mother, and his wife has been diagnosed with COVID-19, diminishing her ability to care for his family.  See Mot. at 10–11.  He adds that his wife's illness would risk infecting "more vulnerable individuals."  Id. at 11.  While caring for a spouse can sometimes meet the family circumstances prong, there is no evidence that Mr. Jackson's wife—whose medical records appear to show that she was diagnosed with COVID-19 in March of 2020, see Exhibits (dkt. 2246) at 1 (sealed)—is incapacitated and needs his care.

Order Denying CR at 3.  His original motion also asserted that "the way the pandemic is spreading here in this prison meant that he was "in dire need to be released."  Id. at 6.  He asserts without elaboration that the time he already served "has met many of the original sentencing goals."  Mot. for Reconsideration at 3.

## II.      LEGAL STANDARD

The First Step Act permits a defendant to move for relief under § 3582(c)(1)(A) if the defendant satisfies the statute's exhaustion requirements.  See First Step Act § 603(b)(1).  The defendant may bring a motion only once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

The First Step Act did not alter the original framework's requirements that a court consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for a reduced sentence, see 18 U.S.C. § 3582(c)(1)(A), and that any sentence reduction under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).

Before the First Step Act enabled defendants to bring their own motions for compassionate release under § 3582(c)(1)(A), the Sentencing Commission promulgated a policy statement enumerating circumstances constituting "extraordinary and compelling reasons" to reduce a sentence,  U.S.S.G. § 1B1.13 cmt n.1, and directing that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any

United States District Court
Northern District of California

2

other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2).

The policy statement refers to motions brought by the Director of the Bureau of Prisons, and not to motions brought by defendants, as defendants could not bring such motions when the policy statement was last amended.  See U.S.S.G. § 1B1.13.  Because the policy statement does not refer to motions brought by defendants, it is not binding on district courts considering such motions.  See Aruda, 993 F.3d at 802.

In exercising its discretion, the Court looks to the policy statement for helpful guidance. The Court presently agrees with the policy statement's definition of "extraordinary and compelling reasons" and the policy statement's guidance that people who present a danger to the community should not be granted compassionate release.

First, the Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence all relate to a defendant's individual characteristics or conditions—that is, some combination of the defendant's health, age, and family situation.  See U.S.S.G. § 1B1.13 cmt n.1.  For example, if the defendant suffers from "a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," the "extraordinary and compelling reasons" standard is satisfied.  See U.S.S.G. § 1B1.13 cmt. n.1(A)(i)(i)–(ii).  The standard is also satisfied if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less," U.S.S.G. § 1B1.13 cmt. n.1(B), or in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner, id. § 1B1.13 cmt. n.1(C). Finally, the standard is satisfied if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances.  U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence are sensible.  Although a future motion could conceivably persuade the Court that these circumstances fail to capture the full range of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "extraordinary and compelling reasons" to reduce a sentence under § 3582(c)(1)(A), the Court has

2    yet to encounter such a motion.

3            Second, as discussed above, the Sentencing Commission has directed that a court may

4    reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a

5    danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

6    U.S.S.G. § 1B1.13(2).  Section 3142(g), in turn, requires courts to "take into account" four factors

7    when determining the defendant's dangerousness: (1) "the nature and circumstances of the offense

8    charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics

9    of the person," and (4) "the nature and seriousness of the danger to any person or the community

10   that would be posed by the person's release."  18 U.S.C. § 3142(g).

11           This framework is also sensible.  The Court would not exercise its discretion under

12   § 3582(c)(1)(A) to grant relief to a defendant that the Court determines is a danger to the

13   community.  Thus, the Court sees no reason to deviate from the policy statement's dangerousness

14   requirement, which ensures that the Court carefully weighs the public's interest in safety before

15   reducing a defendant's sentence.  Even if the Court did not consider Mr. Jackson's dangerousness

16   based on U.S.S.G. § 1B1.13, however, it would still do so as part of its consideration of the 18

17   U.S.C. § 3553(a) factors.  See 18 U.S.C. § 3582(c)(1)(A) ("after considering the factors set forth

18   in section 3553(a) to the extent that they are applicable"); 18 U.S.C. § 3553(a)(2)(C) ("need for

19   the sentence imposed . . . to protect the public from further crimes of the defendant").

20   **III.    DISCUSSION**

21           The Court denies Mr. Jackson's motion for reconsideration.

22           As an initial matter, it appears that Mr. Jackson has not exhausted his claim.  Mr. Jackson

23   asserted in his original motion that he submitted "a request to reduce the term of imprisonment to

24   the Warden of FCI Lompoc on July 21, 2020."  Original Mot. at 7.  But "the records custodian at

25   FCI-Lompoc has not found any record of such a request,"  Opp'n (dkt. 2268); Waldinger Decl. ¶

26   4.  Without exhaustion, this Court has no jurisdiction to adjudicate Mr. Jackson's motion.  See 18

27   U.S.C. § 3582(c)(1)(A); Barron v. Ashcroft, 358 F.3d 674, 677 (9th Cir. 2004) (quoting McCarthy

28   v. Madigan, 503 U.S. 140, 144 (1992)) ("'Where Congress specifically mandates' it, exhaustion is

                                                      4

United States District Court
Northern District of California

1  not merely appropriate but 'required.'").

2       Even assuming that Mr. Jackson had properly exhausted, or that his request was lost, he

3  fails to satisfy 18 U.S.C. § 3582(c) because extraordinary and compelling reasons do not warrant a

4  reduction in his sentence.

5       The family circumstances Mr. Jackson describes are not extraordinary and compelling.

6  There is no evidence that Mr. Jackson's wife requires his care.  In addition, U.S.S.G. § 1B1.13

7  cmt. n.1(C) does not recognize the care of a parent as a basis for a sentence reduction.  Even if the

8  Court were to reject that non-binding guidance, it is by no means clear that Mr. Jackson's mother

9  requires his care.  Mr. Jackson's wife contracted COVID-19 over a year ago, in March 2020.

10  Original Mot. at 6; Order Denying CR at 3 (citing Exhibits (dkt. 2246) at 1).  There is no evidence

11  now that she is incapable of caring for his mother, or that other individuals are not capable of

12  caring for his mother.

13       As for Mr. Jackson's own health, although he has a medical condition that would make it

14  more likely that he would suffer serious illness should he contract COVID-19, see Opp'n at 3

15  (citing Ex. 1 at 15), he has received both doses of the Pfizer-BioNTech vaccine—on December 30,

16  2020 and January 21, 2021, id. at 5 (citing Ex. 1 at 17).  The Court is reassured both based on the

17  efficacy of the vaccine, see FDA Decision Memorandum, available at

18  https://www.fda.gov/media/144416/download (Dec. 11, 2020) at 9 (reporting 95.0% efficacy), and

19  based on the measures BOP has taken to protect the health of inmates, see Opp'n at 14–16

20  (collecting information), that Mr. Jackson's health does not present extraordinary or compelling

21  reasons for his release.  See United States v. Ruelas, No. 18-cr-48-LHK, 2021 WL 1615369, at *3

22  (N.D. Cal. April 26, 2021) ("Defendant, who is 45 years old, recovered from COVID-19 last year,

23  and will be fully vaccinated with the Moderna COVID-19 vaccine tomorrow, has failed to

24  demonstrate extraordinary and compelling reasons justifying compassionate release.").

25       Nor does a re-balancing of the 18 U.S.C. § 3553(a) sentencing factors lead the Court to

26  conclude that Mr. Jackson's sentence should be reduced.  The Court adopts the government's

27  reasoning as to this point, including its concern about his risk of harm to the public.  See Opp'n at

28  17–21.  After all, the Court observed at sentencing that "there are no limits that I have seen as to

1   the breadth of [Mr. Jackson's] criminal activity," calling him "a one-person crime wave."  <u>See</u>

2   Transcript of Feb. 24, 2016 (dkt. 1467) at 25.

3        The motion is DENIED.

4        **IT IS SO ORDERED.**

5        Dated: May <u>13</u>, 2021



CHARLES R. BREYER
United States District Judge